IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MONROE LIPSEY, on behalf of himself and others similarly situated employees,

    Plaintiff,

-vs-

RETREAT CAPITAL MANAGEMENT, INC., D/B/A ALLSEC FINANCIAL SERVICES, a California Corporation,

    Defendant.
_____/

Case No: 3:17-CV-1915-D

**JOINT MOTION TO APPROVE COLLECTIVE ACTION
SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW**

Plaintiff Monroe Lipsey ("Lipsey") and the 91 additional Opt-In Plaintiffs ("Opt-In Plaintiffs") in this matter (Lipsey and the Opt-In Plaintiffs collectively referred to herein as the "Plaintiffs"), and Defendant Retreat Capital Management, Inc., D/B/A Allsec Financial Services ("Allsec" or "Defendant"), hereby notify the Court that Plaintiffs and Defendant (collectively, the "Parties") have reached a carefully negotiated settlement of Plaintiffs' claims and jointly move the Court for approval of the Parties' Settlement Agreement ("Agreement"), which represents a reasonable compromise of a disputed matter under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"). An executed copy of the Settlement Agreement is attached to the Appendix hereto (hereinafter the "Agreement"). In support of this joint motion and as grounds for the Court's approval of the Agreement, the Parties state as follows:

# INTRODUCTION

1. Lipsey initiated this action against Defendant on July 18, 2017, alleging a violation of the FLSA for failure to pay overtime wages, and seeking certification of a collective action pursuant to 29 U.S.C. § 216. (*See* Doc. 1).

2. On November 8, 2017, the Parties filed a Joint Stipulation for Conditional Certification of FLSA Collective Action and Facilitating Notice to Putative Opt-In Plaintiffs. (Doc. 23).

3. The Court granted the Parties' Joint Stipulation regarding conditional certification on November 9, 2017, and revised its Order at the request of the Parties by Order dated January 22, 2018. (*See* Docs. 25 and 44).

4. Both before and after the Court granted the Parties' Joint Stipulation for conditional certification, Plaintiffs filed notices with the Court reflecting consent by the Opt-In Plaintiffs to opt into this matter. (*See* Docket, generally).

5. In total, the final collective group of Plaintiffs consisted of Lipsey and 78 Opt-In Plaintiffs. In addition, the parties have agreed to accept the late-filed claims of thirteen (13) putative class members, solely for the purposes of settlement. Thus, the total number of individuals encompassed within this settlement is ninety-two (92) class members, including Mr. Lipsey.

6. Plaintiffs believe that the cause of action, allegations, and contentions asserted in this matter have merit and that the evidence developed to date supports the claims asserted. Defendant denies Plaintiffs' allegations and asserts that it had reasonable grounds to believe it complied with the FLSA at all times and that it acted in good faith and did not willfully violate the FLSA. Allsec also denies it employed Plaintiffs, and contends that Plaintiffs were properly

classified as independent contractors and therefore outside the coverage of the FLSA. As such, this is a highly disputed claim. However, the Parties recognize and acknowledge that the expense in time and costs of litigation, the inherent uncertainty and risk of litigation, as well as the potential difficulties that arise in litigation, make settlement of this matter a mutually appealing resolution at this time.

7. Accordingly, the Parties have reached a settlement[1] to resolve the Plaintiffs' claims for alleged unpaid back wages, liquidated damages, attorneys' fees, and expenses. Pursuant to applicable Fifth Circuit law, this Court is empowered to review and approve the provisions of settlement agreements in actions brought for back wages under the FLSA. *Pedigo v. Austin Rumba, Inc.,* 722 F.Supp.2d 714, 716 (W.D. Tex. 2010) ("FLSA claims may be compromised after the court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).") (quoting *Villeda v. Landry's Rests., Inc.,* 2009 WL 3233405, at *1 (S.D. Tex. Oct.7, 2009)); *see also Lynn's Food Stores, Inc. v. U.S. Dep't of Labor,* 679 F.2d 1350, 1353 (11th Cir.1982).

8. Because the Parties have agreed that the terms reflected in this Agreement are mutually satisfactory and represent a fair and reasonable resolution of a bona fide dispute, the Parties respectfully request that the Court approve the Agreement.

9. In further support of the Parties' joint request for judicial approval of the Agreement, Plaintiffs acknowledge they are satisfied they will be reasonably compensated under the terms of the Agreement for the alleged unpaid back wages to which they claim to be entitled. Further, Plaintiffs' counsel represents that: (a) Plaintiffs fully understand the Agreement, and (b)

---

[1] Following written discovery and depositions, the Parties engaged in written and verbal settlement discussions and negotiations prior to determining an agreeable settlement of Plaintiffs' claims.

Plaintiffs have consulted with their counsel of record before agreeing to the Agreement and have entered into the Agreement knowingly and voluntarily.

10. The Parties further stipulate that neither Plaintiffs nor Defendant are prejudiced by this settlement or the Agreement.

11. For the foregoing reasons, the Parties respectfully request that the Court accept and approve the Agreement as a fair and reasonable compromise of disputed issues under the FLSA, enter an order granting this joint motion and approving the Agreement, and dismissing this action in its entirety, with prejudice, with each Party to bear his, her, or its own costs, and enter a final judgment.

## MEMORANDUM OF LAW

Employees can settle claims brought under the FLSA in two ways. First, employees can settle and waive their claims under the FLSA if the United States Secretary of Labor supervises the payment of unpaid wages by the employer to the employee. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores*, 679 F.2d at 1353. Second, in the context of a private lawsuit brought by an employee against an employer under the FLSA (as is the case in the instant action), an employee may settle and release FLSA claims if the parties present the district court with a proposed settlement, and the court subsequently approves the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1353 (noting that in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness."). The Fifth Circuit has also held that parties may privately settle and FLSA claim involving a bona fide dispute over where there exists a bona fide dispute as to liability and all parties are represented by counsel. *Martin v.*

*Spring Break '83 Productions, L.L.C.*, 688 F.3d 247 (5th Cir. 2012), citing *Martinez v. Bohls Bearing Equip. Co.*, 361 F.Supp.2d 608 (W.D. Tex. 2005) ("a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability.").

"The primary focus of the Court's inquiry in deciding whether to approve the settlement of a FLSA collective action is not on due process concerns as it would be for a Rule 23 class action.... Rather[,] the Court primarily focuses on ensuring that an employer does not take advantage of its employees in settling their claim for wages." *Sims v. Hous. Auth. City of El Paso,* 2012 WL 10862119, at *2 (W.D. Tex. Feb. 29, 2012) (quoting *Liger v. New Orleans Hornets NBA Ltd., P'ship,* 2009 WL 2856246, at *2 (E.D. La. 2009)). "When a court scrutinizes an FLSA settlement agreement, it must determine that the compromise is fair and reasonable resolution of a bona fide dispute over the FLSA's provisions." *Domingue v. Sun Elec. & Instrumentation, Inc.,* 2010 WL 1688793, at *1 (M.D. La. Apr.26, 2010); *see also Lynn's Food Stores,* 679 F.2d at 1355 (noting that a court can enter a stipulated judgment when it "determine[s] that a settlement proposed by an employer and employees, in a suit brought by the employee under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."). "In reviewing the terms of a proposed [FLSA] settlement, there is a strong presumption in favor of finding it fair." *See Thompson v. Brookstone Building Co.*, 2016 WL 3878500, at *2 (N.D. Ala. July 18, 2016) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

In detailing the reasons for court approval of an FLSA settlement, the Eleventh Circuit has stated as follows:

> [S]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus,

> when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. *If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

*Lynn's Food Stores*, 679 F.2d at 1354 (emphasis added).

The Parties to this action believe that, after scrutinizing the settlement, the Court will find the Agreement to be fair to all Parties. The Agreement reflects a compromise of issues actually in dispute and was reached in an adversarial context in which Plaintiffs were represented by competent and experienced counsel. The Parties vigorously disputed the merits of this case, with Plaintiffs contending that Defendant violated the FLSA by failing to pay certain overtime wages owed to Plaintiffs, Defendant disputing Plaintiffs' claims and factual allegations, and Defendant denying it was Plaintiffs' employer, and more specifically that Plaintiffs were employees rather than independent contractors. The Parties engaged in settlement discussions based on documentation and their independent calculations and analysis, and reached a mutually agreeable resolution for Defendant to pay Plaintiffs 100% of their alleged unpaid wages and 42.5% of their alleged unpaid liquidated damages, as well as reasonable attorneys' fees and costs to Plaintiffs' attorneys.[2] The Parties' Agreement satisfies all statutory wage payment requirements of the FLSA.

The Parties entered into this Agreement in recognition of the risks inherent in any litigation—specifically, for Plaintiffs, the risk of no recovery, and for Defendant, the risk of an

---

[2] The Parties agree that the total amount to be received by Plaintiffs will, therefore, be equal to or exceed the amount of potential back pay they could recover in this action. To that end, even after attorneys' fees and costs are paid out of the common fund each Plaintiff will receive an amount equal to approximately 142.5% of their alleged unpaid overtime wages, or put another way, 100% of the claimed overtime damages, and 42.5% of the claimed liquidated damages.

adverse verdict on the merits. Because of these risks, the Agreement, which provides for significant compensation to Plaintiffs, as well as a payment of reasonable attorneys' fees and costs to Plaintiffs' counsel for prosecuting this matter, represents a fair and reasonable compromise. Finally, the Parties understand the terms of the Agreement and attest to the reasonableness of such terms.

Thus, because the Agreement represents a fair and reasonable compromise over a bona fide FLSA wage dispute, and was negotiated in good faith and at arms' length, the Court should approve the Agreement.

## SETTLEMENT AGREEMENT

### I.   Plaintiffs' Statement of Claims

1.   This action is brought pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*, for equitable and declaratory relief and to remedy violations of the provisions of the FLSA by Defendant, which have deprived Plaintiffs — hourly-paid workers – of their lawful overtime wages under the FLSA. Specifically, Plaintiffs alleged that Defendant misclassified Plaintiffs as independent contractors and required Plaintiffs to work over forty hours in a workweek without compensating them fully for all overtime wages due in violation of the FLSA. This action was brought to recover unpaid overtime wages, and an equal amount in liquidated damages, owed to Plaintiffs.

2.   Plaintiffs were recruited by Allsec to perform anti-money laundering and enhanced due diligence duties for Allsec's client Standard Chartered Bank ("SCB"), at SCB's facilities in Irving, Texas.

3.   Plaintiffs performed these duties during the three-year period prior to the filing of this action and in some cases continue to perform these duties. Plaintiffs at times worked hours

exceeding forty hours in a given workweek and were just paid their regular hourly rates. Plaintiffs assert claims under the FLSA for unpaid overtime wages.

### A.   Claims of Plaintiff Monroe Lipsey

4.   Lipsey alleges he was employed by Defendant and was recruited to work as an AML Worker[3] by Allsec and Allsec recruited AML Workers to perform work for SCB at times relevant to the claim. Lipsey further alleges he was paid an hourly rate of pay for all hours of work.

5.   Lipsey alleges that he regularly worked over forty hours a workweek, but was not provided overtime compensation for hours worked over forty hours in a workweek. *See* Doc. 1.

6.   Allsec denies it employed Lipsey and contends it properly classified Lipsey and other AML Workers as independent contractors. Thus Allsec denies it has any obligation to Lipsey under the FLSA.

7.   Defendant denies Lipsey is entitled to any additional compensation whatsoever.

### B.   Claims of Opt-In Plaintiffs

8.   The Opt-In Plaintiffs submitted written consents to become plaintiffs in this action.

9.   Like Lipsey, the Opt-in Plaintiffs allege that they were recruited to work as AML Workers by Allsec and Allsec recruited them to perform work for SCB at times relevant to the claim.

---

[3] This term, defined in the Agreement, includes the positions conditionally certified by the Court: SAR Writers, SAR Analysts, AML Financial Transactions Quality Analysts-SME, and AML Analysts.

10. The Opt-In Plaintiffs allege that they regularly worked over forty hours a workweek, but were not provided overtime compensation for hours worked over forty hours in a workweek.

11. The Opt-In Plaintiffs' dates of service varied during the relevant time period in this action. Similarly, the rates of pay for the Opt-In Plaintiffs also varied.

12. Defendant denies that the Opt-In Plaintiffs are entitled to any additional compensation whatsoever and contends that it properly classified them as independent contractors.

## II. Allsec's Statement of Defenses

13. Defendant asserts Plaintiffs have been properly compensated pursuant to the terms of their contract and that the FLSA is not applicable to their work for Defendant due to their classification as independent contractors.

14. Defendant further contends liquidated damages are unwarranted in this matter because any alleged violation of the FLSA was not willful, but occurred in good faith with reasonable grounds for believing it was in full compliance with the FLSA. Defendants assert that this good-faith belief was both subjectively and objectively reasonable. *Alvarez-Perez v. Sanford-Orlando Kennel Club,* 515 F.3d 1150, 1163 (11th Cir. 2008).

## III. Settlement Terms

In an effort to resolve this matter, Allsec produced records, including payroll and work hour records, to aid Plaintiffs' counsel in their evaluation of Plaintiffs' claims and Defendant's defenses, and produced two subject matter witnesses for deposition. The Parties recognize that gathering additional documentary and testimonial evidence regarding whether Plaintiffs worked hours for which they were not provided full overtime compensation, whether Allsec is an

employer of Plaintiffs, whether Defendant "willfully" violated the FLSA, and whether Defendant operated in "good faith," would significantly increase litigation costs. These disputes would likely remain unresolved, require dispositive motion filings, and ultimately result in a trial on the merits.

Based upon Allsec's records, calculations, and analysis, and Plaintiffs' calculations and analysis, the Parties were able to calculate the total number of hours worked by Plaintiffs for which Plaintiffs allegedly did not receive the full overtime compensation required by the FLSA. The Parties then multiplied those hours by the applicable overtime wage rates for the Plaintiffs, and doubled this number for liquidated damages for the applicable period at issue in this matter.[4] Notwithstanding this settlement calculation, Defendants deny willfully violating the FLSA and deny this matter is appropriate for liquidated damages or a three-year statute of limitations.

Throughout settlement negotiations, the Parties candidly discussed the strengths and weaknesses of their respective positions. Notably, the Parties recognized the inherent risks of continued litigation. Ultimately, the Parties agreed on a common fund settlement amount of $690,000 to resolve Plaintiffs' claims in this matter. Plaintiffs accepted this settlement offer, which consists of $471,000 in back wages and liquidated damages to the Plaintiffs, and an incentive payment of $5,000 to the lead plaintiff, Monroe Lipsey. Lipsey's efforts in this matter were integral and indispensable to the commencement, organization, and resolution of this matter, including communication with the Opt-In Plaintiffs and future assistance with

---

[4] If Plaintiffs completely prevailed and recovered every hour of overtime compensation at their complete overtime rate, plaintiffs would be collectively owed $330,308.76 in overtime wages. With full and complete liquidated damages (without factoring in Defendant's defense to liquidated damages), that amount is theoretically doubled to $660,617.52.

disbursement of settlement proceeds.[5]  A breakdown of each Plaintiff's recovery under the settlement is set forth in Exhibit A to the Agreement.

The method of calculation used in determining the above amounts is reasonable and provides Plaintiffs with one hundred percent (100%) of their claimed unpaid wages for the applicable liability period, and also provides them with approximately forty-two and one-half percent (42.5%) of their claimed liquidated damages for this period, after attorneys' fees and costs are deducted.

The Agreement allows payment of Plaintiffs' counsel reasonable attorneys' fees of thirty percent (30%) of the common fund ($207,000), and reimbursement of out-of-pocket costs in the amount of $7,000.00.  This amount compensates Plaintiffs' counsel for work already performed and includes work yet-to-be performed by Plaintiffs' counsel, including future work regarding class administration.  Currently, the total costs expended by Plaintiffs' Counsel total approximately $6,812.27, not including future administration costs of mailing each settlement check to the ninety-two class members.  Plaintiffs' requested attorneys' fees represent 30% of the common fund created through counsel's efforts.  Plaintiffs' counsel will also pay any additional costs of administration out of the attorneys' fee received, as well as future attorneys' fees expended answering any questions class members may have and explaining the settlement to them.

Plaintiffs' requested attorney fee percentage of 30% is within the normal range for contingency fee awards awarded within this Circuit in similar common fund collective action

---

[5] *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) ("[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. . . . Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives."); *see also Miller v. Spence*, No. 14-0468, 2016 WL 2350142, at *3 (S.D. Ala. May 3, 2016) (awarding representative incentive payment in FLSA collective action matter).

settlements. *See Green-Johnson v. Fircroft, et al.*, No. Civ. A. 4:12-cv-01307 (S.D. Tex., April 3, 2013), Doc. 50 (J. Rosenthal) (approving 40% contingency fee in an FLSA collective action); *Hanson et al v. Camin Cargo Control, Inc.*, No. Civ. A. 4:13-cv-00027 (S.D. Tex. 2015), Doc. 116 (approving 40% contingency fee in an FLSA collective action); *Villarreal, et al. v. Source Refrigeration & HVAC, Inc.*; No. Civ. A. 1:12-cv-00243 (W.D. Tex. October 8, 2013), Doc. 71 (approving 40% contingency fee in FLSA collective action); *Covey, et al. v. Iron Cactus, et al.*; No. Civ. A. 1:12-cv-00111-SS (W.D. Tex. August 6, 2013) (same); *Barnard et al v. Intertek USA Inc.*, No. Civ. A. 4:11-cv-02198 (S.D. Tex., Jan. 8, 2014), Doc. 184 (same).

The requested percentage is also well within the range of attorney's fees previously approved as reasonable by a multitude of courts around the country in similar common fund settlements. *See, e.g., Moultry v. Cemex, Inc.*, Case No. 8:07-cv-00453-MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.*, Case No. 4:00-cv-00435-RH-WCS, Dkts. 14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel), *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002) ("[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund."); *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case).

Equally important, Plaintiffs agree that the attorneys' fees and costs payable under the settlement agreement are fair and reasonable and should be paid to Plaintiffs' attorneys in light of the prosecution of this action and favorable negotiation of settlement. Plaintiffs' counsel

expended extensive time studying Allsec's records (which numbered thousands of pages), and taking two depositions, as well as time negotiating with Defendant's counsel and preparing individualized damages calculations. Defendant has agreed that an amount up to and including the requested amount may be awarded to Plaintiffs' counsel. Defendant has agreed to pay this amount in light of the costs expended, work performed, hours spent, and hourly rates awardable, and in an effort to expedite payment to Plaintiffs and to avoid costs and delays associated with continued litigation and fee petitions.

Additionally, Plaintiff performed extensive work on behalf of the members of the collective action, all of which was instrumental in the result ultimately achieved, and requests a service award of $5,000. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001). Such compensation for time, effort, risk and service does not improperly grant preferential treatment to these individuals. Quite simply, without their participation and efforts, this class settlement would not occur. Such service payments proposed by the settlement are fair and reasonable. Defendant has no objection either to Class Counsel's requested award for attorney's fees and costs or to the proposed service awards.

The back pay will be paid subject to all applicable federal, state, and local employee tax withholdings and payroll deductions. Plaintiffs will also receive liquidated damages to be reported on an IRS Form 1099. Plaintiffs agree that they shall be responsible for all tax reporting obligations for payments made by Defendant under this Agreement and that Defendants shall provide the appropriate W-2 and 1099 forms per Plaintiff. The Plaintiffs will receive varying total amounts depending on the overtime hours worked by them and the rates of pay received by

them, as set forth in Exhibit A to the Agreement, and 50% of the total will be considered back pay wages and 50% of the total will be considered liquidated damages as described above.

In addition to the foregoing, Defendant will issue payment in the amount of $214,000.00 to Plaintiffs' counsel, to be reported on IRS Forms 1099 to Morgan & Morgan, P.A.

Defendant will make the above settlement payments and attorneys' fees and costs payments within 14 days after the date of the Court's order approving settlement. Defendants will make the payments by hand delivery or certified U.S. mail to Plaintiffs' counsel who will then in turn mail each payment to each class member individually.

The Parties represent that they have reached a reasonable and fair resolution of Plaintiffs' FLSA claims. The record indicates that a bona fide dispute existed between the Parties regarding Plaintiffs' entitlement to alleged unpaid overtime wages. The Parties represent that they engaged in good faith, arms' length negotiations in an effort to resolve the matter.

## **CONCLUSION**

The Parties have reached a settlement as to all issues and claims, including the issue of attorneys' fees and costs. Counsel for the Parties affirm to the Court that they have authority from their respective clients to settle pursuant to the specific terms set forth in the Agreement. The settlement of this matter is contingent on the Court's approval of the Agreement.

For the foregoing reasons, the Parties respectfully request that the Court accept and approve the Agreement as a fair and reasonable compromise of disputed issues under the FLSA, enter the proposed order attached hereto granting this joint motion and approving the Agreement, and dismissing this action in its entirety, with prejudice, with each Party to bear his, her, or its own costs, and enter a final judgment.

Date: June 25, 2018.

| FOR PLAINTIFFS | FOR DEFENDANT |
|---|---|
| /s/ *Andrew R. Frisch* <br> Andrew R. Frisch <br> MORGAN & MORGAN, P.A. <br> 600 N. Pine Island Road, Suite 400 <br> Plantation, Florida 33324 <br> Telephone: (954) WORKERS <br> Fax: (954) 327-3013 <br> afrisch@forthepeople.com <br><br> C. Ryan Morgan <br> MORGAN & MORGAN, P.A. <br> 20 North Orange Avenue, 16th Floor <br> P.O. Box 4979 <br> Orlando, Florida 32802 <br> Telephone: (407) 420-1414; <br> Fax: (407) 425-8171 <br> rmorgan@forthepeople.com <br><br> Clara H. Saafir <br> 3236 San Jacinto Street <br> Dallas, TX 75204 <br> Telephone: (214) 223-8981 <br> csaafir@icloud.com | /s/ *Stewart Hoffer* <br> Stewart Hoffer <br> Fran Robin Aden <br> HICKS THOMAS LLP <br> 700 Louisiana Street, Suite 2000 <br> Houston, TX 77002 <br> T: (713) 547-9138 <br> Fax: (713) 547-9150 <br> shoffer@hicks-thomas.com <br> faden@hicks-thomas.com <br><br> Eric D. Feldman <br> HOFFMAN & KALISER PC <br> 17950 Preston Road, Suite 230 <br> Dallas, TX 75252 <br> Telephone: (214) 420-7327; <br> Fax: (214) 865-7298 <br> efeldman@hkmlawyers.com |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

                                                         **s/ *Andrew R. Frisch***
                                                         Andrew R. Frisch